# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 12-0134 (DSD/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Michael Romeo Geraci, a/k/a Michael Garfield Blakepotter, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This case came before the undersigned United States Magistrate Judge for a pretrial hearing on July 26, 2012. Surya Saxena appeared on behalf of the United States of America. Andrew Mohring appeared on behalf of Defendant Michael Romeo Geraci.

Prior to the motions hearing, Defendant filed two motions to suppress. The first was a Motion to Suppress Evidence Obtained as a Result of the April 10, 2012 Search and Seizure (ECF No. 31). Defendant orally withdrew that motion. Still pending before the Court is Defendant's second suppression motion – Defendant's Motion to Suppress April 10, 2012 Statements, Admissions, and Answers (ECF No. 30). Defendant seeks to suppress statements made during four "phases" of interrogation. As described below, the Court recommends that Defendant's Motion to Suppress be denied.

## I.      Factual Background

On April 10, 2012, St. Paul Police arrested, searched, questioned, and detained Defendant before transporting him to the Ramsey County Law Enforcement Center ("LEC"). From the time police made contact with Defendant until the time Defendant was placed in his holding cell for

the night, Defendant made various statements. The Government offered the testimony of St. Paul Police Officer Kevin Sullivan ("Sullivan") at the hearing. No other witnesses were called.

Officer Storey, another St. Paul Police Officer, advised Sullivan and a group of other police officers that there would be a van located in the parking lot of a strip mall at the corner of University Avenue and Dale Street in St. Paul, Minnesota. Officer Storey advised that the van was stolen and there was "possibly a weapon in the vehicle."[1] Elsewhere in the parking lot, other officers also awaited the arrival of the van. When the van arrived at the scene, the officers relayed the license plate number to Officer Storey, who confirmed that it was the suspect vehicle.

After the officers received confirmation that the van was stolen and was the vehicle for which they were waiting, they executed a stop. To stop the car, the police used two unmarked SUVs, each with four officers, to "box in" the van.[2] That is, one SUV parked in front of the suspect vehicle and the other parked behind it. Officer Sullivan was charged with taking control of the suspect, who was the only occupant of the vehicle. Officer Sullivan and Officer Vixayvong told Defendant to get out of the van then "escorted [Defendant] to his stomach." While Defendant was laying on face down on the ground, Officer Sullivan frisked him.

While Officer Sullivan was frisking Defendant, another officer searching the driver's side door of the van yelled "GUN!" indicating the existence of a weapon in the vehicle. Officer Sullivan heard this exclamation clearly and continued to frisk Defendant. Before any officer directed any questions or comments to Defendant, as Officer Sullivan continued to frisk him, Defendant said, "It's for my protection." Officer Sullivan asked Defendant "Why [he] would

---

[1] Officer Storey obtained information regarding the van and the possibility of there being a weapon in the van from a confidential informant.

[2] A K-9 unit, another unmarked squad car, and potentially two other surveillance vehicles were in the area to assist on this arrest but those units were not directly involved in Defendant's arrest.

have it for [his] protection?" Defendant apparently answered Officer Sullivan's question. Officer Sullivan admitted that at this point, Defendant had not been advised of his *Miranda* rights.

Officer Sullivan indicated multiple justifications for asking this question. He acknowledged that it is not uncommon for drug transactions such as this one to be executed with multiple moving parts. That is, one person may accept money and another may distribute drugs. Officer Sullivan also indicated a general concern that other parties may be in the vicinity of the transaction. Furthermore, Officer Sullivan acknowledged he asked the question for investigative purposes. After this exchange, law enforcement placed Defendant in a squad car and transported him to the LEC.

The record adduced from the evidence at the hearing does not affirmatively indicate any communications among Defendant and the transporting officers. Counsel for Defendant posited various questions focusing on whether any police officers asked questions of Defendant while he was in the squad car, but Officer Sullivan denied having any knowledge of such questions. Counsel asked whether Defendant was told, "[you] don't have to go to jail" and whether an officer reviewed a list of names from Defendant's cell phone with him. Officer Sullivan again denied having any knowledge of such questions. The apparent focus of counsel's questions was whether law enforcement attempted to secure Defendant's cooperation or indicated Defendant would suffer repercussions as a result of failing to cooperate. Finally, Officer Sullivan indicated he was unaware of Defendant signing a consent form or any advice of rights in the squad car. The Government has not produced any evidence of such questioning or waiver of rights to Defendant. Officer Sullivan, who was the only Government witness at the hearing, was unaware of any because he did not transport Defendant.

Upon arriving at the LEC, Defendant was interviewed by Officer Anderson and Officer Sullivan. Officer Anderson filled out the standard "*Miranda* Form" with Defendant, filling in Defendant's personal identification information. (Gov't Exhibit 1.) Officer Anderson read each of the standard rights guaranteed by the Constitution. Defendant initialed by each right, acknowledging he understood his rights, and signed the bottom of the form, indicating he was advised of his rights. This process was also audiotaped. (Gov't Exhibit 2.) Defendant talked with Officers Anderson and Sullivan and at no time indicated a desire to be represented by counsel or stop talking with law enforcement. Defendant responded to numerous questions by Officer Anderson. The interview lasted about fourteen minutes.

After the interview ended, Officer Anderson turned off the audio recording and asked Defendant more questions. Officer Sullivan could not recall the specific nature of the unrecorded discussion between Defendant and Officer Anderson. To Officer Sullivan's knowledge, there is no record of that conversation, nor has any record or statement been produced to Defendant.

## II. Discussion

The Court must determine which of Defendant's statements, if any, are admissible against him at trial. Such a determination depends on the Federal Rules of Criminal Procedure as well as Defendant's constitutional right to counsel, as articulated by *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny. As discussed in detail below, the Court concludes that Defendant's spontaneous comment that the gun was for his protection should not be suppressed, nor should his response to Officer Sullivan's question of "why?" Any questioning that occurred while Defendant was in the squad car awaiting, and during, transport to the LEC, has not been produced to Defendant, nor has any report of statements given after the audio recording was stopped at the LEC. Accordingly, those undisclosed statements may not be introduced at trial.

Finally, the contents of Defendant's recorded statement at the LEC need not be suppressed because Defendant gave his statement voluntarily after being advised of his rights pursuant to *Miranda* and its progeny.

### A. Undisclosed Discovery

On July 27, 2012, this Court entered an Order granting Defendant's motion for discovery, as required by Federal Rules of Criminal Procedure 12 and 16. (Order, Jul. 27, 2012, ECF No. 38.) Rule 16 requires the Government to, among other things, "disclose the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). Likewise, Rule 16 compels the Government to produce all of Defendant's written or recorded statements. Fed. R. Crim. P. 16(a)(1)(B). If the Government fails to comply with Rule 16, the Court may "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). The Court has broad discretion under Rule 16 to remedy nondisclosure of evidence. *United States v. Williams*, 902 F.2d 675, 677 (8th Cir. 1990) (citing *United States v. Thornberg*, 844 F.2d 573, 580 (8th Cir. 1988)).

In this case, the Government has made no disclosure of any statements made while Defendant was handcuffed in the police car. Officer Sullivan knew of no such communications and, to date, law enforcement has not provided any such statement to the Government. Defendant insists law enforcement questioned him during his transport from the scene of his arrest to the LEC. Moreover, Officer Sullivan admitted questioning continued after turning off the tape recorder at the LEC. To date, however, the Government has not provided that information.

The Court recommends prohibiting the Government from introducing any statements made by Defendant during his transport to the LEC or after the recording ended following his interrogation.

### B. Un-*Mirandized* Statements

Stated broadly, the rule announced in *Miranda v. Arizona* bars the Government from introducing statements resulting from the custodial interrogation of a criminal defendant before first advising the defendant of certain rights under the Constitution. *Miranda*, 384 U.S. at 444-45. Two conditions, therefore, must be satisfied before a court may suppress un-*Mirandized* statements: custody and interrogation.

#### 1. Custody

First, the defendant must be in governmental custody. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"); *United States v. Black Bear*, 422 F.3d 658, 661-62 (8th Cir. 2005); *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). To determine whether a suspect is "in custody" for *Miranda* purposes, the Court considers the circumstances surrounding the interrogation and whether those circumstances would lead a reasonable person to feel at liberty to terminate the interrogation and leave. *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011); *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *United States v. Lowen*, 647 F.3d 863, 866-67 (8th Cir. 2011).

From the point at which Defendant was removed from his car and "escorted" to the ground, he was in police custody. He was lying face down on the ground being searched and handcuffed by a police officer. It is beyond a doubt that, at that point, Defendant was in police custody for the purposes of *Miranda*.

## 2.     Interrogation

The second condition that must be satisfied before considering whether evidence must be suppressed is whether Defendant's statements were in response to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985). Interrogation does not necessarily mean direct questioning, but rather means "any questioning or conduct that the government officer should know is reasonably likely to elicit an incriminating response from the suspect." *McLaughlin*, 777 F.2d at 391 (citing *Innis*, 446 U.S. at 301). Spontaneous statements, however, need not be suppressed. *See Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989) (citing *Stumes v. Solem*, 752 F.2d 317, 322-23 (8th Cir. 1985)).

Here, Defendant's first statement, that the gun was for his protection, was not in response to interrogation. Defendant offered that unprompted statement after an officer searching the vehicle found a weapon in the driver's side door of the stolen van and yelled "GUN!" There is no indication that the exclamation was made in a manner that should have elicited a response and, because Defendant spontaneously offered that statement, it need not be suppressed pursuant to *Miranda*.

The next statement Defendant made was an undisclosed declaration in response to Officer Sullivan's question of "why" Defendant would need a gun for protection. Officer Sullivan's question is archetypically interrogative in nature and invited a response from Defendant. While this is exactly the type of question and circumstances to which *Miranda* is meant to apply, the Court must first determine whether certain exceptions that rebut the presumption that a statement was coerced exist and whether the *Miranda* rights advisory was valid.

### 3. Exception to *Miranda*: Request for Clarification

In general, a suspect's response to an officer's request to clarify a spontaneous statement does not constitute a suppressible statement. *See United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (citing *Butzin*, 886 F.2d at 1018). When a suspect's statement is ambiguous, an attempt to clarify that statement does not represent the type of interrogation contemplated by *Miranda*. *Butzin*, 886 F.2d at 1018. The Eighth Circuit in *Chipps* held that the request for clarification was not an interrogation because it was "not likely to elicit incriminating evidence." *Chipps*, 410 F.3d at 445. In *United States v. Tschacher*, the court relied heavily on the fact that the defendant had initiated the conversation, which tended to negate a finding of interrogation. *Tschacher*, No. 4:09CR3025, 2010 WL 2682517, at *5 (D. Neb. May 20, 2010) (citing *Chipps*, 410 F.3d at 445). The court found that subsequent questioning represented an attempt to clarify the defendant's ambiguous comments. *Id.*; s*ee also United States v. Burrell*, Crim. No. 06-81 (JNE/RLE), 2006 WL 1715608, at *9 (D. Minn. June 19, 2006) (quoting *Chipps*, 410 F.3d at 410 ("*Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation *not initiated by the officer*" (emphasis added))).

Here, the original statement that the gun was "for [Defendant's] protection" was a spontaneous admission, not invited by interrogation by law enforcement. Regardless of the reasoning behind Officer Sullivan's question as to why Defendant needed protection, his attempt to clarify Defendant's ambiguous statement need not be suppressed pursuant to *Miranda*.

### 4. Exception to *Miranda*: Public Safety Exception

Alternatively, the public safety exception to *Miranda* applies in this situation. The Supreme Court established the "public safety" exception to *Miranda* in *New York v. Quarles*, 467 U.S. 649 (1984). This exception allows an arresting officer to interrogate a suspect before

advising him of his *Miranda* rights where "spontaneity rather than adherence to a police manual is necessarily the order of the day." *Id.* at 656. The public safety exception applies in situations reasonably requiring the police to secure the safety of the public or law enforcement. *United States v. Everman*, 528 F.3d 570, 572 (8th Cir. 2008). Indeed, *Everman* instructs that the Court must consider whether the evidence "was obtained in response to a question asked in furtherance of public safety and not designed *solely to solicit testimonial evidence . . . .*" *Id.* (emphasis added). The Court considers whether the safety of the public could *objectively* be considered in jeopardy. *Id.* Therefore, an officer's subjective intent or motivation is irrelevant to the applicability of the public safety exception.

The Court concludes that, under these circumstances, the public safety exception applies and, accordingly, Defendant's statement should not be suppressed. During rush hour, in a busy parking lot of urban St. Paul, police officers effected an arrest of a suspect in a drug investigation. Even without Defendant's statement that he needed a gun for protection, law enforcement officers could have objectively considered public safety to be a concern. Exacerbating that concern is the fact that Defendant needed a gun for his protection. A police officer could objectively understand that statement to mean that Defendant considered himself in imminent danger. The Court determines that a reasonably objective officer would have considered public safety to be legitimately in jeopardy. Accordingly, the Court recommends the motion to suppress statements in response to Officer Sullivan's question be denied.

### 5. Validity of *Miranda* Advisory

Defendant also asserts the rights advisory was invalid based on questions posed before he was advised of his rights. In *Missouri v. Seibert*, the Supreme Court held, where a *Miranda* warning is given after questioning, certain circumstances may exist that would render an

9

otherwise valid *Miranda* warning ineffective. *Seibert*, 542 U.S. 600, 609-11 (2004). The Court determined the simple recitation of a *Miranda* warning may not satisfy *Miranda*'s requirements in every situation. *Id.* at 611. In *Seibert*, the Court set forth certain factors to consider in determining a statement's admissibility. Those factors include

> the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogators' questions treated the second round as continuous with the first.

*Id.* at 615. The burden lies with the Government in establishing the admissibility of the statements. *Id.* at 608 n.1 (citing *Brown v. Illinois*, 422 U.S. 590, 604 (1975)). The Government must demonstrate that Defendant's waiver of his *Miranda* rights was "voluntary, knowing, and intelligent." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Such a demonstration requires that Defendant's waiver be "the product of a free and deliberate choice" and "with a full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it." *United States v. Vinton*, 631 F.3d 476, 484 (8th Cir. 2011). Indications by police that cooperation will facilitate a more lenient sentence or that a failure to cooperate will result in a longer prison sentence do not render an otherwise voluntary statement involuntary. *See United States v. Killgore*, 58 F.3d 350, 353 (8th Cir. 1995) (finding that a promise of leniency alone does not negate voluntariness of confession); *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990) (finding that threats of long prison sentence as retaliation for failure to cooperate with law enforcement does not negate voluntariness of custodial statements).

In support of his motion, Defendant relies on Officer Sullivan's "why," as well as other questioning that took place "at the scene of his arrest." (Def.'s Mem. 9.) Defendant contends the first "rounds" of questioning were "sufficient to obtain incriminating statements about weapon

possession" and that questioning on that subject continued in the final phases. (*Id.*) Defendant also asserts that Officer Sullivan was present throughout the phases of questioning, therefore content and interviewing personnel overlapped. That overlap, Defendant argues, likens this case to *Seibert* and impels the invalidation of the *Miranda* warning and suppression of all statements before and after the rights advisory.

The Court disagrees. There is evidence that, after Defendant's spontaneous statement that the gun was for his protection, Officer Sullivan asked why he needed it for protection. Counsel for Defendant questioned Officer Sullivan and attempted to proffer evidence that other significant questioning occurred and Defendant responded to that questioning. That untested, unsworn assertion carries little weight, and was not identified before the motion hearing.[3] Assuming, however, that law enforcement attempted to secure Defendant's cooperation and implied that failure to cooperate may have resulted in a harsher prison sentence, that attempt and implication does not render the waiver of *Miranda* and the resulting statements involuntary. Under *Kilgore* and *Meirovitz*, law enforcement may seek a detained suspect's assistance without running afoul of *Miranda* or invalidating an otherwise voluntary waiver of rights.

In this case, the evidence in the record reflects a fairly routine, audiotaped rights advisory, in which Defendant acknowledged each of the rights laid out in *Miranda* by initialing a standard form next to each protection. Further, Defendant signed the bottom of the *Miranda* form indicating his understanding of his rights.

Here, the evidence clearly reflects a voluntary, knowing, and intelligent waiver of Defendant's *Miranda* rights. At no point did Defendant ask to end the interview or even suggest

---

[3] Defendant did not specifically identify any statements made while he was in the squad car immediately after his arrest as subjects of this motion. *See United States v. Losing*, 539 F.2d 1174, 1178 (8th Cir. 1976).

he would like to speak with counsel. Accordingly, the Court finds a valid waiver of Defendant's *Miranda* rights and no attempt to withdraw that waiver.

### III. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Currently undisclosed evidence be deemed inadmissible; and

2. Defendant's Motion to Suppress April 10, 2012 Statements, Admissions, and Answers (ECF No. 30) be **DENIED**.

Dated: August 21, 2012                               s/ *Jeanne J. Graham*
                                                    JEANNE J. GRAHAM
                                                    United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **September 5, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.